## James McAlarney et Ux., Plffs. in Err., *v.* Charles M. Conyngham and L. C. Paine, Partners, Doing Business as Conyngham & Paine.

A married woman may, by mortgage duly executed and acknowledged,
pledge her real estate for a debt of her husband.

NOTE.—For the power of a married woman to execute a mortgage upon
her separate estate, see note to Vandyke v. Wells, 2 Sad. Rep. 126.

Such a mortgage (although originally obtained by misrepresentation and fraud, or incapable of enforcement for failure of consideration or alteration of terms of payment of the husband's indebtedness) may be renewed and validated by subsequent agreement in writing between the mortgagor and mortgagee.

Where a deed is presented to a man to sign it is his duty to read it if he can read, and, if he cannot, to ask to have it read and explained to him; and if he does neither, he is guilty of negligence, and the court will not relieve him.

The certificate of acknowledgment of a married woman's mortgage of her separate estate is conclusive evidence of the truth of all the facts therein set forth, and can only be overthrown upon proof that she was acting under duress or fraud.

(Argued May 12, 1887.   Decided May 23, 1887.)

January Term, 1887, No. 348, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.    Error to the Common Pleas of Columbia County to review a judgment on a verdict for the plaintiffs in an action of scire facias sur mortgage.   Affirmed.

The facts as they appeared at the trial in the court below are stated in the charge to the jury, the material portions of which were as follows:

It appears that, in February, 1877, a mortgage was executed by James McAlarney and his wife, Mary McAlarney, to the firm of Conyngham & Paine, conditioned for the payment of the sum of $10,000, which, the mortgage recites, was secured by their bond.   It appears that this mortgage was upon the property of the wife, and that the debt thus secured was not her debt but the debt of her husband.

According to the plaintiffs' allegation, this mortgage was given to secure first the debt of McAlarney, then in existence, amounting to some $4,000 or $5,000, and also to secure the firm of Conyngham & Paine for future credits to be given to McAlarney.   It would appear from the testimony that at this time, McAlarney was somewhat embarrassed, and that the plaintiffs had refused to give him further credit, unless further security should be given; and, according to the plaintiff's allegation, this mortgage was given to secure future purchases of merchandise by McAlarney.

In addition to that it appears that in February, 1878, the year after the mortgage was executed, another paper was drawn and executed and acknowledged, containing certain recitals with regard to the original mortgage and providing further that this mortgage should extend as a security for a further advance to be paid by the firm of Conyngham & Paine, amounting to some $1,260, this advance to be made for the purpose of paying interest due to Mrs. Emley and to Mrs. Rutter, upon mortgages which they held against McAlarney. To this claim of the plaintiffs the defendants have set up in reality three defenses.

First, that Mrs. McAlarney was simply a surety for her husband, and that by reason of the arrangement which the plaintiffs allege was made between them and Mr. McAlarney the terms of the contract upon which she became surety were changed; and that by reason of that change in the terms of the contract she became discharged from her liability. This is based upon the fact that, at or about the time that the mortgage was executed, Paine gave to McAlarney a new paper setting forth the purposes for which the mortgage was given and the conditions upon which it would be satisfied. This has been referred to as "the explanatory paper." Across the face of it is an indorsement or writing changing the terms and conditions of that paper itself so as to increase the liabilities for which the mortgage was to be given and held from $6,000 to $10,000. While it is alleged by the plaintiffs that this paper was given to McAlarney, that is totally denied by McAlarney himself.

Second, that the agreement between Paine and McAlarney was not merely that future credits for the sale of merchandise should be given by Conyngham & Paine to McAlarney, but that these credits for his purchases from them should be extended only so far as to make up with the debt which he then owed to them the sum of $5,000, and that the rest of the debt secured by the mortgage, namely, $5,000 more, was to be for cash to be advanced to McAlarney by Conyngham & Paine; and it is alleged by the defendants, and not denied upon the part of the plaintiffs, that this advance was never made, that this $5,000 in cash was never paid by Conyngham & Paine to McAlarney. With regard to this second defense there is a conflict in the testimony, the plaintiff, Paine, testifying that this mortgage was given to secure solely in the first instance, debt incurred and to be incurred upon merchandise sold to the defendant, and de-

fendant, McAlarney, testifying that the agreement was that the mortgage should secure also a future advance of $5,000 in cash.

Third, that even if the plaintiffs' allegation be true, namely, that the agreement between Paine and McAlarney was that the mortgage should stand as security only for debt incurred upon the merchandise account between them for sales either past or future, yet Mrs. McAlarney did not give the mortgage for that purpose or with that understanding, but that she gave it for another purpose, or that she was induced by fraud and misrepresentation into signing the mortgage, the allegation upon the part of the defense being that she was told by her husband that the mortgage was to be given for the purpose of securing a loan of $5,000 in cash to him, in order that he might be able to meet his then pressing liabilities.

A year after the mortgage was executed, and some time after the future credits had been given to the defendant, and after, according to the defendant's allegation, the plaintiffs had refused to advance the $5,000 in cash, an agreement was entered into between the defendants and the plaintiffs, dated January 4, 1878, and acknowledged February 6, 1878. This agreement was executed by the defendants, and on its face was duly acknowledged before a justice of the peace. This agreement recites as follows:

"*Whereas,* The said James McAlarney and Mary, his wife, have jointly given a mortgage on certain lands situate in the County of Columbia, the said mortgage being given to the said Conyngham & Paine to secure to them a certain debt due them from the said McAlarney and also to secure them, the said Coyngham & Paine, for all advances, accounts, credits and debts incurred by the said McAlarney, due or to become due before the maturity of the said mortgage, and not exceeding in total amount the sum of $10,000." It provides for securing the advance which the plaintiffs were to make to pay the interest on the Rutter and the Emley mortgages, and says: "That the plaintiffs may and shall hold the mortgage of the above land, as executed to them on land in Columbia County, as well for the prompt and first (faithful?) repayment of the said (debts, etc.) as for $1,226.34, with interest on the same at the rate of 10 per cent per annum from the date hereof, as for the debt or debts already secured by said mortgage; it being understood that the whole amount so secured, together with the sum advanced as

above set forth, shall be accrued due and payable, as expressed in said indenture of mortgage, two years from the date thereof."

In order to prevent a verdict against them defendants must satisfy you, not only that the original mortgage was obtained from Mrs. McAlarney by fraud and misrepresentation, or that it was given for a different purpose than that which the plaintiffs claim, but also that the agreement of February 6, 1878, was obtained from her by fraud and misrepresentation. Even though the original mortgage might have been invalid as against her, on account of the agreement alleged to have been made between the plaintiffs and her husband without her consent, yet this would operate as a renewal of the said mortgage, re-establishing it as a valid security against her; in short, then, unless the evidence would warrant the conclusion that she was induced by fraud or misrepresentation to execute that paper, the plaintiffs would be entitled to recover.

The paper is attacked upon two grounds:

First, that at about the time it was executed, some arrangement was entered into between McAlarney and Paine that the latter should buy the Plymouth property at sheriff's sale, and hold it until McAlarney could redeem it. This written instrument contains no such agreement; and there is not sufficient evidence in this case to warrant the reformation of this agreement, or to warrant a conclusion by the jury that it did not contain the full agreement between these parties.

[In the second place it is alleged that there was misrepresentation as to the contents of this supplementary paper, McAlarney testifying that he did not read it, and in fact that he did not understand it as it appears to be. So far as he is concerned, he would be estopped from denying the validity of the instrument; it is plain and unambiguous upon its face; he had the full opportunity to read and examine it; he was able to read it; and the law is that where a deed is presented to a man to sign, it is his duty to read it if he can, and, if he cannot, to ask to have it read and explained to him; and if he does not do this, he is guilty of supine negligence, and the courts will not relieve him; so that we repeat, so far as McAlarney is concerned, he is estopped from alleging that he did not know, or that the supplementary paper was obtained from him by fraud or misrepresentation.]

Was it fraud upon Mrs. McAlarney? [An act of assembly

has provided a method by which, and by which alone, a married woman can convey her separate estate; it is by a written instrument acknowledging before a justice of the peace; she must be examined by the justice, in the absence of her husband; she must there declare that she executes the instrument without any fear or coercion or compulsion of her husband, and the certificate of the magistrate must set forth that the contents were fully made known to her by him. Where a married woman thus executes a deed for the conveyance of her separate estate, and the certificate of the fact is annexed, that certificate is conclusive evidence of the truth of all the facts therein alleged, and can only be overthrown by proof that she was acting under duress or fraud. The effect of this certificate cannot be avoided but by the clearest and most satisfactory evidence; it is not enough that the married woman testifies that she did not know what were the contents of the paper, for the paper was before her and she had an opportunity to read it or did read it. It would appear certainly from the testimony in the case, all that relates to this point, that no inducements or representations were held out to Mrs. McAlarney by the plaintiffs; there were no negotiations of any kind directly between them and her; they reside in Wilkesbarre, and the defendants reside in Plymouth. While the supplementary paper would seem to have been drawn in Wilkesbarre, it was executed and acknowledged in Plymouth before a justice of the defendants' own choosing; so that, so far as the evidence shows, there was no connivance or management by or upon the part of the plaintiffs, to induce the defendants to execute this paper. But the defendants' counsel argues that, under the testimony, McAlarney was the agent for the plaintiffs, and that therefore the plaintiffs are responsible for whatever representation he made to his wife; and here is the point at which the court and the counsel diverge. We cannot regard McAlarney, under the testimony in the cause, as the agent of the plaintiffs, in the sense in which the defendants' counsel puts it. McAlarney was the party to be benefited by the execution of this paper; it was for his interest; it was to secure his debt, an advance already made and another to be made to him.]

We can readily understand how or upon what principle a mortgagee ought to be held responsible for representations made by the husband, where the mortgagee employs the husband to obtain from his wife a mortgage on the wife's property to pay a debt of

some other person; but when, as in this case, the husband is the plaintiff's debtor or one applying to him for credit, and the plaintiff, who becomes the mortgagee, says to the husband: "If you will furnish me a mortgage on your wife's property, as security, I will give you this credit,"—we do not think that the creditor thereby makes the husband his agent, so as to make the acts and representations of the husband the acts and representations of the mortgagee. The misrepresentations or coercion of the husband may possibly avoid the deed, upon the ground that the facts as set forth in the certificate of acknowledgment are overcome, but not upon the ground that the husband was the agent of the mortgagee.

The evidence in the present case is not sufficient to overcome the proof, which the certificate of acknowledgment itself furnishes, that this mortgage was executed by the wife, and acknowledged by her in the absence of her husband, without any coercion from him, and after the facts that the instrument contains had been fully made known to her. The result of our conclusions is this: that the plaintiffs would be entitled to recover the amount of the debt which was due from McAlarney at the time the mortgage was executed and that they would also be entitled to recover the amount advanced by them to pay the interest on the Rutter and Emley mortgages, and that they would also be entitled to recover from the defendants whatever advances in money or goods were made after the execution of the mortgage, provided the agreement was as testified to by the plaintiffs; if, however, the agreement was as testified to by the defendants, we are of opinion that they would not be entitled to recover beyond the amount of the debt which was due at the time the mortgage was executed, unless you take it to be proved that at the time Mrs. McAlarney executed the second paper she knew that those things had been furnished by the plaintiffs upon the faith of this mortgage. If that fact had been by the testimony brought home to her, we think she would be held for that also; but we are inclined to think that the testimony is not sufficient to bring home to her the knowledge that these goods were furnished after the execution of the mortgage upon the faith of its security. As we understand, the plaintiffs, in order to relieve the cause of any further difficulty, propose to release any claim for anything due on any purchase made after the execution of the mortgage; and, therefore, under our instructions, your verdict will be for the

plaintiffs, for the amount of debt due at the time the mortgage was executed, and the amount of the advance to pay the Rutter and the Emley interests, with interest upon the sum of these up to the present day.

The counsel have presented certain written points which they request us to answer, and it is our duty to do so.

The defendants' counsel request us to charge:

1. That while a mortgage may be given by a married woman to secure her husband's indebtedness, it is only valid when given in good faith and without any deceit practised upon her, or misrepresentation, or undue influence. Such mortgage cannot be enforced if it be shown by the evidence that she was induced to execute the same by reason of any misrepresentation or deceit practised upon her.

*Ans.* This point, as a general proposition, is well worded and is affirmed.

2. That, where a wife joins her husband in a mortgage of her own property to secure his debts, or the payment of money loaned to him, she is a surety and entitled to all the rights of a surety. If therefore the jury find that subsequently to the execution and delivery of the mortgage in this case, a change was made by the plaintiffs, even with the assent of her husband, with regard to the indebtedness of James McAlarney which was secured by the mortgage, such change would operate to discharge Mary McAlarney, and the plaintiffs cannot recover against her.

*Ans.* We decline to charge as requested in this point, because it leaves out of view the effect of the supplementary agreement executed in February, 1878.

The third and fourth points are to be taken together: "That, where a party acts through an agent, especially commissioned to do the act, the statements and acts of the agent are imputable to the principal; and also, that where a party seeks to enforce a claim obtained from the misrepresentations of another, he cannot, on the one hand, thus seek to obtain the benefit of such misrepresentations and, on the other, repudiate them as not being his own nor binding upon him; therefore, in the present case, the plaintiffs being here endeavoring to enforce a mortgage obtained by them from Mary McAlarney, through her husband, James McAlarney, if the jury find that such mortgage was obtained from her by reason of statements and representations mislead-

ing her and amounting to deceit practised upon her, the plaintiffs cannot recover in this action."

*Ans.* We decline to charge as requested in this point, for the reason that this also leaves out of view the effect of the supplementary agreement of February 6, 1878, as curing any defect which might originally have existed in the mortgage. These two points are negatived.

5. That under all the evidence in the case, if the jury believe the testimony of Mary McAlarney, that she was induced to execute the mortgage in question in this case by the distinct representation that $5,000 in cash was to be furnished to her husband, in addition to a credit for a like amount, her testimony being corroborated as it is by the testimony of the justice who took her acknowledgment, and by that of her husband, then the plaintiffs cannot recover.

*Ans.* We decline to charge as requested in that point, for the reason already given.

The counsel for the plaintiffs have requested us to charge as follows:

1. That there is not sufficient evidence to impeach the validity or to change or alter the legal effect of the mortgage and the supplementary agreement produced in evidence by the plaintiffs.

*Ans.* If it were not for the second agreement, to which we have called your attention at length, we would say that there would be evidence to go to you as to the fairness of the execution of the mortgage, as to its validity; but, in view of all the testimony, we say, as requested in the point, that there is not sufficient evidence to impeach the validity or to change or alter the legal effect of the mortgage and the supplementary agreement.

A calculation has been made, and as there is no dispute as to these items, you will render your verdict for the amount ascertained to be now due, namely: $9,978.74.

Verdict and judgment for the plaintiffs for $9,978.74.

The assignments of error specified: (1) The answer to the plaintiffs' first point; (2) and (3) the portions of the charge inclosed in brackets; (4) the answer to the defendants' second point; (5) the answer to the defendant's third and fourth points; (6) the answer to defendant's fifth point; and (7) the action of the court in directing a verdict for the plaintiffs.

*C. W. McAlarney* and *A. Ricketts,* for plaintiffs in error.—
The case of Cridge v. Hare, 98 Pa. 561, is decisive of the present. There Mrs. Cridge executed the mortgage under misrepresentations to her; and this fact was held to be a defense, although the mortgagee was not the party who made the misrepresentation, nor present when it was made, nor shown to have any connection with it. Michener v. Cavender, 38 Pa. 334, 80 Am. Dec. 486.

In addition to the misrepresentation in the present case it appears from the testimony of the justice that the acknowledgment of the wife was not separate and apart from her husband, as the law requires. That he was within hearing distinctly appears from the fact that when Mrs. McAlarney hesitated at the acknowledgment, he at once came back and repeated the representations and assurances which induced her to execute it. See McCandless v. Engle, 51 Pa. 309.

The subsequent paper signed and acknowledged by Mrs. Mc-Alarney in this case did not cure these defects.

The present action is not an action of covenant on this agreement, but a scire facias on the mortgage. By the ruling of the learned judge we have the singular situation that the writ of scire facias on the mortgage may not be maintained on the mortgage itself, by reason of its invalidity; but it may be maintained because there is a subsequent "agreement" which is valid.

The statute confers no power upon a married woman to make contracts, or to bind or dispose of her lands, except in the precise statutory mode. Glidden v. Strupler, 52 Pa. 400; Graham v. Long, 65 Pa. 383; Brown v. Bennett, 75 Pa. 420.

This "supplementary agreement," as the court styles it, cannot operate as a waiver, confirmation or ratification. The disability of the married woman continued, and therefore such cases as Brown v. Bennett, 75 Pa. 420, which rules that after the disability is removed she may ratify a contract made during coverture, have no applicability.

There was no new consideration; and the mere confirmation of a void matter, even by deed, is of no avail. Co. Litt. 295, b; Gilbert, Tenures, 74, 75.

There is no evidence that Mrs. McAlarney knew the facts with regard to the invalidity of the mortgage, and that she intended to waive her rights in the matter; and this was positively essential to make the agreement operate as a confirmation or ratifica-

tion of the mortgage or a waiver of her defenses against the same. Therefore her agreement could not be held to be a confirmation of the mortgage. Bank of Pennsylvania's Estate, 60 Pa. 471, 479; Negley v. Lindsay, 67 Pa. 217, 5 Am. Rep. 427; Harmer v. Killing, 5 Esp. 102; Curtin v. Patton, 11 Serg. & R. 305; Hinely v. Margaritz, 3 Pa. 428.

A mortgagee in this state is not a purchaser, but a lien creditor simply; and the plea of bona fide purchase for value does not apply to him as to a purchaser. Rickert v. Madeira, 1 Rawle, 325; Scott v. Sample, 5 Watts, 53; Wilson v. Shoenberger, 31 Pa. 295.

But whatever their rights might be as to any other matter, the plea of bona fide purchase for value, without notice, could not be set up by these parties as to this supplementary agreement.

In Schuylkill County v. Copley, 67 Pa. 386, 5 Am. Rep. 441, it was ruled that where an illiterate person is induced to execute a deed upon a misrepresentation of its contents it is not his deed at all.

If husband and wife execute a deed for her property, relying upon certain misrepresentations, the deed is void notwithstanding the fact that a money consideration was paid. Levick v. Brotherline, 74 Pa. 149; Lippincott v. Whitman, 83 Pa. 244.

In Williams v. Baker, 71 Pa. 476, 483, upon a question of ratification by a married woman after she became of age, of a conveyance made while she was a minor, this court says: "The court would have been justified in withdrawing the question from the jury and instructing them in conformity with the doctrine in Glidden v. Strupler, 52 Pa. 400, that she could not ratify the conveyance otherwise than by a re-acknowledgment of the deed in the mode prescribed by the statute."

Paine and McAlarney had made a change as to the indebtedness upon which the mortgage was taken as security, and therefore Mrs. McAlarney was discharged, she being merely a surety and entitled to all the rights and privileges of a surety. Schouler, Dom. Rel. 155; 2 Bishop, Married Women, § 370; Neff v. Horner, 63 Pa. 327, 3 Am. Rep. 555; Fulmer v. Seitz, 68 Pa. 237, 8 Am. Rep. 172; Caley v. Philadelphia & C. County R. Co. 80 Pa. 363; Brez v. Warner, 9 W. N. C. 45; Bacon v. Chesney, 1 Starkie, 192; Glyn v. Hertel, 8 Taunt. 208; Campbell v. French, 6 T. R. 200.

He acts fraudulently who secretly changes a state of affairs,

and then procures another to do an act into which the true state of affairs enters as a motive. Lancaster County Bank v. Albright, 21 Pa. 228.

Where inquiry becomes a duty, the party who neglects to perform it should be visited with at least constructive notice of the facts that probably would have been brought to light if it had been duly made. Leonard's Appeal, 94 Pa. 168; Hottenstein v. Lerch, 12 W. N. C. 4.

*H. W. Palmer* and *Alexander Farnham,* for defendants in error.—Had the proof of the agreement of the parties, as to what indebtedness was to be secured, rested in parol, the evidence of the defendants might have been admissible under the authority of Cridge v. Hare, 98 Pa. 561; but the supplementary agreement was in evidence. Its execution was admitted. It was offered as showing the written admission of the parties that the mortgage was given by them as security for the matters of indebtedness therein stated; and, therefore, so long as it stands unimpeached the defendants are incompetent to testify that the additional $5,000 was to be advanced in money, as such evidence, parol in its nature, goes to change, alter and affect the written instrument which they executed and acknowledged.·

The testimony of Mr. and Mrs. McAlarney, uncorroborated as it is, is not sufficient to overcome the effect of a solemn instrument of writing, executed and acknowledged by them.

The right method of determining this question would be by supposing that the defendants had instituted their proceedings in equity towards having the agreement reformed so as to read in accordance with their allegations.

Since the scintilla doctrine has been exploded the preliminary question of law for the court is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy a jury that the fact sought to be proved is established. Hyatt v. Johnston, 91 Pa. 200.

Under our peculiar system of administering equitable principles in common-law actions, the judge presiding at the trial performs the functions of a chancellor. As a judge, he ought not to permit a jury to do what he, as a chancellor, would not sanction. Rowand v. Finney, 96 Pa. 192.

Tested by this rule there is nothing in the evidence on the part of the defendants which would have justified the court in sub-

mitting to the jury the question whether Mrs. McAlarney's execution of the supplementary agreement had been obtained by misrepresentation or fraud.

It is only where a chancellor would reform the instrument that parol evidence is admissible to contradict it. Phillips v. Meily, 106 Pa. 536.

With only the unsupported oath of one of the parties to the instrument on the one side, and the opposing and contradictory oath of the other party, together with the words of the instrument, on the other side, such unsupported oath is not sufficient to justify the reformation of the instrument; and in such case the evidence should not be submitted to the jury. Jackson v. Payne, 114 Pa. 67, 6 Atl. 340.

The evidence of both McAlarney and his wife is the evidence of but one witness. They constitute together but one witness. Sower v. Weaver, 78 Pa. 444.

The fact that the person alleged to be present, and who attested the execution of the instrument, was not called by the defendants to testify on the subject, notwithstanding he was examined concerning the execution of the mortgage, contradicts them. Thomas v. Loose, 114 Pa. 35, 6 Atl. 326; Juniata Bldg. & L. Assò. v. Hetzel, 103 Pa. 507.

Mrs. McAlarney, by her own admission, was able to read writing. If a party who can read will not read a deed put before him for execution, or if, being unable to read, he will not demand to have it read or explained to him, he is guilty of supine negligence, which is not the subject of protection, either in equity or at law. Greenfield's Estate, 14 Pa. 496; Pennsylvania R. Co. v. Shay, 82 Pa. 198.

There was, therefore, no fraud upon Mrs. McAlarney; and parol evidence to contradict the writing is inadmissible. Martin v. Berens, 67 Pa. 460.

The magistrate who took her acknowledgment certifies that she acknowledged it privately—separate from her husband, and that he first made the contents of the instrument fully known to her. No attack is made upon this certificate.

It is true that in a number of cases parol evidence has been admitted to overthrow the certificate; but, in all these cases, gross fraud and imposition had been practised, affecting the acknowledgment itself. Heeter v. Glasgow, 79 Pa. 79, 21 Am. Rep. 46; Oppenheimer v. Wright, 106 Pa. 569.

PER CURIAM:

An examination of the evidence, and a due consideration of the argument of the counsel for the plaintiffs in error, fail to satisfy us that the learned judge committed any error.

We concur with him in declaring that all the evidence is not sufficient to impeach the validity, or to change or alter the legal effect, of the mortgage and the supplementary agreement which became a part thereof. There is no error in the answers to the points under the evidence.

Judgment affirmed.